WILKINSON *v.* LATE.

4-7625                                    188 S. W. 2d 123

Opinion delivered June 4, 1945.

*Claude Duty,* for appellant.

GRIFFIN SMITH, Chief Justice. When Lorene pro-
cured a divorce from Ralph Late in 1935, Ralph Junior,
an only child, was four months old. On her complaint
that the husband's conduct rendered her condition in life
intolerable, Lorene was awarded custody of the baby.
Ralph Senior, father, was directed to contribute $10 per
month "for the support, upkeep, and education of said
child."

In 1937 Lorene married John W. Wilkinson, and the
two have made their home in East Orange, New Jersey.
The divorce decree gave Ralph the right to visit his son
at all reasonable times.

In November, 1942, Lorene alleged in a Chancery
petition that an agreement with her former husband

relating to the child's custody had been violated. Substance of the complaint was that in 1940 maintenance payments were in arrears. The indebtedness was compromised for $100, and in consideration the child was sent to its father at Springdale, Arkansas, where it had been for two years. In the meantime Ralph Senior had been inducted into the armed forces, leaving the child with J. N. Late, its paternal grandfather, and with its paternal grandmother, who has since died.

In his response the father alleged that Mrs. Wilkinson "gave him the aboslute custody of said child for which he paid a substantial consideration," and that he has had custody for more than two years. A decree was entered February 2, 1944. It mentions Mrs. Wilkinson's motion and Ralph Late's response, and recites that "evidence, both oral and documentary, was adduced in support of the respective issues." There was a finding that the mother, "for a substantial consideration," had agreed that the father have exclusive custody. Mrs. Wilkinson's motion was accordingly overruled.

In September, 1944, Mrs. Wilkinson moved to have the supplemental decree of February 2nd set aside. In extenuation of the delay she stated that on February 3rd (the day following rendition of the decree denying her petition) the child sustained a severe injury. It was then alleged that the February decree was rendered as a result of mutual misunderstandings. Mrs. Wilkinson admitted that her attorney at Rogers was called over the telephone by the attorney representing her former husband. Her Arkansas attorney, actuated by a misconception of what was intended, consented that the decree of 1935 be "slightly modified." The Arkansas attorney who signed this pleading conceded that if what he said by telephone justified the child's father's attorney in believing consent was given to deprive the mother of custody, then he (Mrs. Wilkinson's attorney) was, proceeding without authority from his client. This attorney, however, insists no such construction should have been placed upon the conversation.

October 11, 1944, the Court vacated the order of February 2nd, on the ground that the attorneys were not in accord. A factual finding was that Ralph Junior had been taken to San Angelo, Texas, where he was living with his uncle, Frank Late. Direction was that the ward be returned to the Court's jurisdiction. J. N. Late, paternal grandfather, was enjoined from removing or permitting the child's removal from the domestic jurisdiction. Copy of the order was sent to Frank Late in Texas and to J. N. Late of Springdale. Neither appears to have been a party to the action. The cause was continued for additional proof.

The decree resulting in this appeal was rendered November 10, 1944. The Chancellor again found that the order of February 2nd was improper, intention being merely to modify to such an extent that the Federal Government would recognize the soldier-father as having a dependent child, to the end that monthly compensation of $50 be collected. Termination of the father's custody as conferred by the February decree was reëxpressed. But—and this is the holding from which Mrs. Wilkinson appeals—there was a further order that custody be vested in Miss Dora Dean, Washington County representative of the Arkansas State Welfare Department. There was the additional direction that ". . . as soon as practicable hereafter the said Dora Dean is instructed to produce said child before this court, to the end that a full and fair hearing may be had whereupon to base a custody order for said minor child in either plaintiff or defendant, as the facts and the equities make it appear to be just, proper and expedient."

In all matters other than the father's attempt to shift from himself the monthly obligation of $10 and to assess it against the Federal Government, the parties to this record appear to have acted in good faith. The War Department, through the Office of Dependency Benefits, is conditionally authorized to make allowances for dependent children of soldiers. The true relationship between Ralph, his former wife, and the child, should have been certified without an amendment to the old decree. Procedural expediency was not an appropriate substi-

tute for the actual status existing between the unfortunate child's parents. Nor was it proper (in connection with the father's allegation that he paid a valuable consideration for custody of his son) to consider the alleged transaction for any purpose other than in determining the mother's attitude. From a contractual standpoint the so-called "obligation to perform" has no foundation in law.

A number of letters written by Mrs. Wilkinson's attorney in New Jersey, and others written by Ralph Late's attorney at Fayetteville, were introduced—the purpose being to bring into the record matters disclosing intention of the parties at the time negotiations were being carried on. Expressions in letters written by Mrs. Wilkinson's New Jersey attorney are sufficiently susceptible of the construction given by those who acted for the child's father to absolve them of improper conduct. This is true because, being partisan advocates, they were looking for admissions—or, we might say, concessions— upon which to base their claim that for an insignificant personal consideration Mrs. Wilkinson was willing to shift the burden of responsibility. Her second husband (and she says he was authorized to negotiate for her) authorized the New Jersey attorney to urge settlement of maintenance arrearages. This attorney insisted that the natural father should pay the child's board. He also wrote that Mr. and Mrs. Wilkinson were considering an offer from the company by which Wilkinson was employed to accept war activity employment in a tropical country; that if arrangements for Ralph's welfare were not satisfactorily made, he would accompany them, and his health might be jeopardized. Even so, we do not think there was voluntary willingness by the mother to surrender the rights she was given by the 1935 decree. Before the mother should be divested of her child's custody, evidence of inability or unwillingness to discharge her obligations should rest upon something more substantial than relayed statements, correspondence, and telephone conversations, in respect of which those who participated are not in accord.

The decree is reversed. Custody is given the mother. The cause is remanded, with directions that the Chancery Court make such orders as may be appropriate, and not inconsistent with the 1935 decree, unless upon further hearing it is shown that changed conditions justify a reconsideration.